# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 130

| | |
|---|---|
| Amber Elizabeth McCay, | Plaintiff and Appellee |
| v. | |
| David William McCay, | Defendant and Appellant |
| and | |
| State of North Dakota, | Statutory Real Party in Interest |

### No. 20230360

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Constance L. Cleveland, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Christopher E. Rausch, Bismarck, ND, for plaintiff and appellee.

Jennifer M. Gooss, Beulah, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1] David McCay appeals from an amended judgment modifying primary residential responsibility and granting Amber McCay's request to relocate. David McCay challenges the court's findings on a material change in circumstances, best interest factors (a), (b), (c), and (d), the findings supporting relocation, and the findings related to the new parenting schedule. Amber McCay requests an award of attorney's fees, asserting the appeal is frivolous. We conclude the findings supporting the material change in circumstances, best interest factors (a), (b), (c), and (d), relocation, and the modified parenting schedule are not clearly erroneous. We affirm the amended judgment of the district court.

I

[¶2] David McCay and Amber McCay were married in 2016 and have one minor child. The parties divorced in 2018, and the district court awarded David McCay primary residential responsibility.

[¶3] On May 10, 2019, Amber McCay moved for an ex parte interim order and filed a supporting affidavit and exhibits. She alleged David McCay had a long history of using alcohol, he was convicted of a second DUI, and he was charged with child neglect for being intoxicated and unconscious outside his apartment door. The district court denied Amber McCay's motion because David McCay had not yet been convicted and was "innocent until proven guilty." David McCay ultimately entered an *Alford* plea to a charge of reckless endangerment.

[¶4] On April 14, 2023, Amber McCay moved to modify primary residential responsibility of the child and requested a change in residence of the child from North Dakota to Nevada. The district court found Amber McCay established a prima facie case justifying modification and ordered an evidentiary hearing be held. Following the evidentiary hearing, the district court granted Amber McCay's motion, awarding her primary residential responsibility and permission to relocate the child to Nevada. The court entered an amended judgment and parenting plan.

II

[¶5]   When a motion to modify primary residential responsibility is brought more than two years after the date of entry of an order establishing primary residential responsibility, modification is appropriate only if the district court finds the following:

    a.  On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

    b.  The modification is necessary to serve the best interests of the child.

N.D.C.C. § 14-09-06.6(6). A district court's decision to grant or deny a motion for a change of residential responsibility is subject to a clearly erroneous standard of review. *Krueger v. Tran*, 2012 ND 227, ¶ 11, 822 N.W.2d 44 (citing *Stanhope v. Phillips-Stanhope*, 2008 ND 61, ¶ 7, 747 N.W.2d 79). "A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or we are convinced, based on the entire record, that a mistake has been made." *Krueger*, at ¶ 11 (citing *Stanhope*, at ¶ 7).

A

[¶6]   David McCay argues the district court erred in finding a material change existed. "A material change in circumstances occurs when new facts are presented that were unknown to the moving party at the time the decree was entered." *Mayo v. Mayo*, 2000 ND 204, ¶ 16, 619 N.W.2d 631. A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development. *Selzler v. Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564.

[¶7]   David McCay contends the district court impermissibly relied on his alcohol usage and the events used as a basis for Amber McCay's 2019 ex parte motion, arguing these were known facts when the motion to modify was brought. While the alcohol issues were known before the initial custody determination, the court focused on the subsequent impact on the child. We do not need to decide if the ex parte order triggered the exclusion of evidence, because the record contains clear evidence of new facts that were not known at the time of the prior custody decree or when the ex parte motion was filed, supporting the finding of a material change in circumstances has occurred.

[¶8]   The record reflects that subsequent to the initial custody determination and denial of the ex parte motion, David McCay has been diagnosed with alcohol use disorder and cannabis use disorder, failed to complete treatment, and had been charged with his fourth

2

DUI offense. The district court found that David McCay has demonstrated a complete disregard of, or inability to comply with, court orders to address his chemical usage. The record reveals that subsequent to both the decree and the ex parte application, David McCay was convicted of endangering the child. Additional evidence of matters subsequent to the original decree and the ex parte order included the following: David McCay was repeatedly unemployed, had moved, and had been repeatedly incarcerated, and that others have served as the child's primary caregiver.

[¶9] In *Ludwig v. Burchill*, 514 N.W.2d 674 (N.D. 1994), we affirmed a material change in circumstances existed when the parent with primary residential responsibility failed to attend AA as ordered by the trial court, continued drinking, was convicted of a second DUI, and abdicated his parenting responsibilities to his parents. *Id.* at 676. We have also recognized that a parent's serious problem with drugs and alcohol constitutes a material change in circumstances. *Haag v. Haag*, 2016 ND 34, ¶ 15, 875 N.W.2d 539.

[¶10] The trial court was in the best position to determine whether these circumstances existed and whether they constituted a material change in circumstances under N.D.C.C. § 14-09-06.6(6). We conclude there is evidence in the record to support the court's findings of a material change in circumstances, the court did not misapply the law, and we are not convinced a mistake has been made. On this record, the court's finding that David McCay's conduct constituted a significant change of circumstances that required a change in custody was not clearly erroneous.

B

[¶11] In addition to a material change in circumstances, there must also be a general decline in the condition of the child or that a change has adversely affected the child so that a change is necessary or compels a change for the best interest of the child. *Kunz v. Slappy*, 2021 ND 186, ¶ 28, 965 N.W.2d 408. David McCay argues there was no evidence to support a finding that the environment he created was an environment that endangered the child.

[¶12] In finding an adverse effect on the child, the district court noted the following:

> Since the Judgment has been entered there has been no stability while the child has been in the Defendant's care. The Defendant has been repeatedly unemployed, he has moved, he has been convicted of endangering *this* child, he has been repeatedly incarcerated and he has used the custody of the child

3

to avoid jail time, while improperly characterizing and disparaging the child's mother as an absent and uncaring parent. That is a reflection of his position in this case, and what he believes to be true, and that is dangerous to the child as well. Holding a position that the other parent is uncaring or absent in light of the facts that have been established here is something that the Court does not think the Defendant is able to protect the child from in any sense of the word, and that adversely affects the child. It is the parent's responsibility, despite the failings of the person they chose to have a child with, to try to protect the child of course, but also to foster whatever safe relationship can be fostered.

[¶13] The court also found that the child was parentified and felt it was her responsibility to take care of her intoxicated father. The court further found that David McCay has no insight on how his alcohol use impacts the child.

[¶14] There is evidence to support the trial court's determination that the changes in circumstances so adversely affected the child that it required a change in custody to foster the child's best interests, the court did not misapply the law, and we are not left with a definite and firm conviction that the trial court made a mistake. The court's finding that the material change in circumstances adversely effects the child is not clearly erroneous.

III

[¶15] David McCay argues the district court erred in weighing best interest factors (a), (b), (c), and (d). The court found those factors favored Amber McCay.

[¶16] "A district court's primary residential responsibility decision is a finding of fact that we analyze under the clearly erroneous standard of review." *Kershaw v. Finnson*, 2022 ND 165, ¶ 9, 980 N.W.2d 40. "A district court's ruling on decision making is also a finding of fact, subject to the clearly erroneous standard." *Taylor v. Taylor*, 2022 ND 39, ¶ 20, 970 N.W.2d 209.

[¶17] "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if this Court, on the entire record, is left with a definite and firm conviction a mistake has been made." *Kershaw*, 2022 ND 165, ¶ 9 (quoting *Vetter v. Vetter*, 2020 ND 40, ¶ 8, 938 N.W.2d 417). "We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct." *Berdahl v. Berdahl*, 2022 ND 136, ¶ 6, 977 N.W.2d 294 (quoting *Holm v. Holm*, 2017 ND 96, ¶ 4, 893 N.W.2d 492). "A choice between two permissible views of the

evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Id.* (quoting *Holm*, at ¶ 4). "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial primary residential responsibility decision merely because we might have reached a different result." *Kershaw*, at ¶ 9 (quoting *Vetter*, at ¶ 8).

[¶18]  Based on our review of the record, we conclude sufficient evidence in the record supports the district court's findings. The court's findings regarding factors (a), (b), (c), and (d) included the following: David McCay focuses on his own needs first, David McCay has not demonstrated the capacity to provide appropriate guidance for the child, Amber McCay has demonstrated a commitment to the child and recognizes the child's needs, David McCay has excessively used alcohol while caring for the child and has no insight on how his alcohol abuse impacts the child, David McCay's financial situation is unstable, David McCay relies on others to provide for the child's needs when he has parenting time, David McCay has repeatedly moved the child's physical location and school enrollment, and David McCay relies on the financial support of others. David McCay's request on appeal is an invitation for this Court to reweigh the evidence. "This Court will not reweigh the evidence or reassess credibility when there is evidence to support the district court's findings, and we will not reverse the decision merely because we might have reached a different conclusion." *Porter v. Porter*, 2006 ND 123, ¶ 5, 714 N.W.2d 865. There is evidence in the record to support the court's findings on factors (a), (b), (c), and (d), the court did not misapply the law, and we are not left with a definite and firm conviction a mistake has been made. The court's findings are not clearly erroneous.

IV

[¶19]  "A district court's decision on a motion to relocate is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous." *Green v. Swiers*, 2018 ND 258, ¶ 4, 920 N.W.2d 471 (citing *Larson v. Larson*, 2016 ND 76, ¶ 21, 878 N.W.2d 54). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, if there is some evidence to support the finding, on the entire record we are left with a definite and firm conviction a mistake has been made." *Graner v. Graner*, 2007 ND 139, ¶ 12, 738 N.W.2d 9. "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have

reached a different result." *Norby v. Hinesley*, 2020 ND 153, ¶ 5, 946 N.W.2d 494. This Court also held "that a trial court may draw inferences from facts presented and may make a finding of fact based upon an inference supported by the evidence." *Id.*

[¶20] "A parent with primary residential responsibility for a child may not change the primary residence of the child to another state except" when the other parent consents or by decree or court order that allows for parenting time with the non-moving parent. N.D.C.C. § 14-09-07(1). "The parent moving for permission to relocate has the burden of proving by a preponderance of the evidence the move is in the child's best interests." *Larson*, 2016 ND 76, ¶ 21. A district court, in determining whether relocation is in the child's best interests, must apply the *Stout-Hawkinson* factors. *Green*, 2018 ND 258, ¶ 5. The *Stout-Hawkinson* factors include:

> 1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,
> 2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,
> 3. The integrity of the noncustodial parent's motives for opposing the move,
> 4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Green*, at ¶ 5. "No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another." *Stai-Johnson v. Johnson*, 2015 ND 99, ¶ 6, 862 N.W.2d 823.

### A

[¶21] David McCay argues the district court erred by finding *Stout-Hawkinson* factor one favored relocation. The first factor considers "[t]he prospective advantages of the move in improving the custodial parent's and child's quality of life." *Green*, 2018 ND 258, ¶ 5. "In analyzing the first *Stout-Hawkinson* factor, 'the district court must balance the advantages of the move, while recognizing the importance of maintaining continuity and stability.'" *Norby*, 2020 ND 153, ¶ 8. The court must weigh economic and noneconomic advantages of the move. *Id.* The information the court may consider includes:

The custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefitted, whether the custodial parent has remarried and requests to move to live with the new spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities.

*Id.* "Analysis of the first factor also requires focus on the importance of maintaining continuity and stability in the custodial family." *Id.* at ¶ 12 (cleaned up).

[¶22] The district court found several advantages of relocation for Amber McCay, including that her current employment has improved her quality of life and permitted her to frequently travel to North Dakota, always at her own expense, to maintain a consistent relationship with the child. The court found the child has benefited from the opportunities provided by Amber McCay's stable employment and stable relationship with her significant other and family members. The court further found that Amber McCay's consistent efforts to assure the child's safety, and the energy she has expended despite David McCay's caustic resistance, which was demonstrated in court and articulated when David McCay turned his back, demonstrates that she is able to compartmentalize David McCay's behaviors and focus on nurturing and supporting the child.

[¶23] The district court's findings were not induced by an erroneous view of the law, evidence exists to support the findings, and, on the entire record, this Court is not left with a definite and firm conviction a mistake was made. The court's findings on the first *Stout-Hawkinson* factor are not clearly erroneous.

B

[¶24] David McCay claims the district court erred in interpreting the fourth *Stout-Hawkinson* factor. The fourth *Stout-Hawkinson* factor considers:

The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Green*, 2018 ND 258, ¶ 5.

[¶25] "When considering the potential negative impact on the relationship between the [non-moving] parent and the child, the ability to restructure parenting time to preserve the relationship is relevant." *Green*, 2018 ND 258, ¶ 10. "A relocation should be denied based on the fourth factor only in exceptional circumstances, including when the court finds" the parent with residential responsibility "would not foster the child's relationship with the [non-moving] parent and would not comply with any [parenting time] the court could order." *Hruby v. Hruby*, 2009 ND 203, ¶ 23, 776 N.W.2d 530. The fact a non-moving parent "will not be able to maintain the same [parenting time] schedule is not, alone, a basis for denying permission to" the parent with residential responsibility "to leave the state with the child." *Negaard v. Negaard*, 2002 ND 70, ¶ 16, 642 N.W.2d 916. "Distance alone is not a sufficient basis to deny relocation; it must be considered in the context of the ability to refashion a visitation schedule that can foster" the relationship between the child and the non-moving parent. *Norby*, 2020 ND 153, ¶ 22.

[¶26] The district court found that the parties have been able to consistently follow parenting plans, and no evidence was presented to suggest otherwise. The court also took steps to help facilitate David McKay's future parenting time by ordering that Amber McCay cover all travel expenses for the child for David McCay's parenting time.

[¶27] The district court's findings were not induced by an erroneous view of the law, evidence exists to support the findings, and, on the entire record, this Court is not left with a definite and firm conviction the district court made a mistake. The court's findings on the fourth *Stout-Hawkinson* factor are not clearly erroneous.

V

[¶28] David McCay argues the district court erred in limiting his parenting time because he and the child have a close relationship and she is accustomed to being in his primary care. As required when considering the *Stout-Hawkinson* factors, the district court considered the potential negative impact the move would have on the relationship between David McCay and the child as well as the realistic opportunity for visitation in light of David McCay's alcohol usage. This Court has recognized "[a] visitation schedule which provides less frequent, but extended, visitation periods can preserve a noncustodial parent's right to foster and develop a relationship with the child"; we also "view the evidence in the light most favorable to the findings." *Goff v. Goff*, 1999 ND 95, ¶ 18, 593 N.W.2d 768; *Reimche v. Reimche*, 1997 ND 138, ¶ 12, 566 N.W.2d 790. "A choice between two permissible views of the evidence is not clearly erroneous, and simply because we might

8

have viewed the evidence differently does not entitle us to reverse the trial court decision." *Hurt v. Hurt,* 2001 ND 13, ¶ 16, 621 N.W.2d 326.

[¶29]  David McCay was awarded extended summer visitation, alternating Thanksgiving and Christmas breaks, and alternating fall and spring breaks. In light of the concerns the district court expressed about the child's safety in David McCay's care, we conclude the parenting time he was awarded is not clearly erroneous.

### VI

[¶30]  Amber McCay requests attorney's fees for having to defend against this appeal. "If the court determines that an appeal is frivolous ... it may award just damages and single or double costs, including reasonable attorney's fees." N.D.R.App.P. 38. An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates bad faith in pursuing the litigation. *United Valley Bank v. Lamb,* 2003 ND 149, ¶ 4, 669 N.W.2d 117. Our ability to impose sanctions under N.D.R.App.P. 38 is independent of a district court's ability to impose sanctions under N.D.C.C. §§ 28-26-01, 28-26-31. N.D.R.App.P. 38 Explanatory Note.

[¶31]  After reviewing the record, we conclude David McCay's appeal is neither flagrantly groundless nor devoid of merit. We accordingly deny Amber McCay's request for attorney's fees for defending against this appeal.

### VII

[¶32]  We affirm the amended judgment granting the motion to modify residential responsibility and for a change of residence.

[¶33]  Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr